UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SEAN NOVELL GRIFFIN | CIVIL ACTION |
| VERSUS | NO. 09-6757 |
| SHERIFF MARLIN GUSMAN ET AL. | SECTION "F" (2) |

# REPORT AND RECOMMENDATION

Plaintiff, Sean Novell Griffin, is a prisoner currently incarcerated in the Orleans Parish Prison system ("OPP") in New Orleans, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin Gusman and the Orleans Parish Criminal Sheriff's Office. He alleges that, while incarcerated in OPP beginning in April 2009 through the present, he has received inadequate medical care for his broken hand and foot. He seeks damages and injunctive relief. Record Doc. No. 1 (Complaint at ¶ V).

On January 19, 2010, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Tim Richardson, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Plaintiff testified that he has been incarcerated in OPP since April 23, 2009, when he was arrested for a probation violation. He stated that he was on probation at that time, based upon a conviction for possession of crack cocaine in March 2008. He stated that his probation was revoked on May 7, 2009, and he is serving a four-year prison sentence.

Griffin confirmed that he asserts a single claim in this case that he has received inadequate medical care for a broken right leg and right hand during his incarceration in OPP. He testified that he is currently incarcerated in the Conchetta facility of OPP.

Plaintiff testified that his hand and foot were already broken when he arrived at OPP. He stated that the injuries occurred during an altercation in a nightclub in Georgia. He said he was discharged from a hospital in Georgia, arrested and extradited to Louisiana shortly thereafter.

Griffin testified that either he was cuffed too tightly or "the leg just healed wrong" during his extradition. He said that, when he arrived at OPP, he advised the intake deputy about his leg and hand problems, although neither his hand nor his leg were then in a cast. Griffin testified that he received a cast at the hospital in Georgia, but "the cast on my foot had broken off before Atlanta could give me medical attention" and he was extradited to Louisiana. He said he had a removable brace on his hand, but no cast. He said the brace was made of a hard material, but he wrapped it onto his hand with an Ace

bandage. He testified that when he arrived at OPP, however, he had nothing on either his foot or his hand.

Griffin confirmed the indication in his medical records that he went through the medical screening process upon his arrival at OPP on April 23, 2009, and he told the screener at that time about the prior fractures of his leg and hand. He testified that nothing was done for these conditions at that time. "They put me in population and that was it," he said.

Griffin confirmed the indication in his medical records that, after his initial screening, he submitted two sick call requests for medical attention, one on May 18 and another on June 9, 2009, complaining about his leg and hand pain. He stated that the medical records correctly reflect that he first saw a doctor concerning these conditions on June 9th. He testified that the records correctly state that he saw medical care providers at OPP for these conditions on three occasions, June 9, September 27 and October 27, 2009. He said he saw a nurse on one occasion, Dr. Gore once and a female doctor whose name he could not recall. Griffin testified that, when he saw Dr. Gore, the physician "didn't do anything. One of the nurses told me that . . . unofficially, she told me that Dr. Gore said by it's not being broken or fractured . . . on OPP property, that it's not their problem."

3

Plaintiff testified that he cannot get out of bed on some days, that he has to drag his leg and that "it's still ill-formed; you can look at it and see that it's deformed." He alleged that he is not getting either proper medication or the medical attention he needs. He confirmed the reference in his medical records that he received x-rays related to his medical condition in June and again in September 2009, which showed that the bone was deformed. He said he was told that he would be sent to the hospital for specialized treatment, but he has not been to the hospital. He said he saw a doctor "earlier this month" (January 2010), which he said was a followup to see what had happened at the hospital, but he still had not been taken to the hospital.

He confirmed the references in his medical records that, during his incarceration in OPP, he has received Naprosyn[1] and another medication, which he described as muscle relaxers. He testified that his basic problem is that the fractures did not heal properly, resulting in deformities, pain and some swelling.

At the conclusion of the hearing, I ordered a medical examination of plaintiff's orthopedic condition pursuant to Fed. R. Civ. P. 35. Counsel for Sheriff Gusman

---

[1] Naprosyn (generic name: naproxen) "is a non-steroidal anti-inflammatory drug (NSAID) with analgesic [pain-relieving] and antipyretic [fever-reducing] properties." Physicians' Desk Reference 2850 (64th ed. 2010); Dorland's Illustrated Medical Dictionary 103, 106 (29th ed. 2000) (hereinafter "Dorland's"). Naprosyn is indicated for the relief of the signs and symptoms of rheumatoid arthritis, osteoarthritis, tendonitis, bursitis and gout, and for the management of pain. Physicians' Desk Reference at 2851.

forwarded to me unverified medical records concerning plaintiff's examination on February 17, 2010 from the orthopedic clinic at the Medical Center of Louisiana in New Orleans ("MCLNO"), which have been separately filed into the record under seal. Record Doc. No. 21. I ordered defendants' counsel to provide a verification, which was received and filed into the record. Record Doc. No. 23.

The Inmate Progress Notes dated February 17, 2010 from the MCLNO are somewhat difficult to decipher because of the examining physician's sometimes illegible handwriting, but my review reveals the following legible comments. The nurse noted that Griffin had an abnormally healed, old, fracture of his right tibia[2] and was complaining of right hand pain. The examining physician noted that plaintiff complained of right fifth metacarpal[3] pain, right tibia pain at the fracture site and decreased mobility in his right leg. Physical examination revealed normal strength in Griffin's right leg, but he had tenderness to palpation at the tibia fracture site. Plaintiff had normal strength in his right hand, but was tender to palpation in his fifth metacarpal and had decreased [illegible] secondary to pain. The physician noted that x-rays showed a well-healed right fifth metacarpal fracture and a well-healed tibia fracture. The doctor's impression was

---

[2]The tibia is the "shin bone: the inner and larger of the leg below the knee." Dorland's at 1840.

[3]The metacarpus is "the part of the hand between the wrist and the fingers" and consists of "five cylindric bones (metacarpals) extending from" the wrist to the fingers. Id. at 1094.

healed right fifth metacarpal fracture and healed right tibia.  The physician's plan was: (1) to discharge Griffin from the clinic, and (2) plaintiff should continue strengthening exercises in both legs, (3) take over-the-counter pain medication as needed and (4) engage in weight-bearing as tolerated, with no restrictions.

## ANALYSIS

I.   STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the

plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

7

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims.

Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim under the broadest reading.[4]

## II. MEDICAL CARE

Griffin contends that, during his incarceration in OPP since April 23, 2009, he has received inadequate medical care for a broken right leg and right hand. Griffin was a convicted prisoner at all relevant times about which he complains. In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976).

"Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994).

---

[4] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

9

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (quotation omitted).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003). If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 1391 (1997). The deliberate indifference standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (additional citations omitted) (emphasis added). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291.

In this case, Griffin's allegations negate any inference that defendants acted with deliberate indifference to his serious medical needs. Initially, it cannot be concluded that the conditions he described, healed fractures in his hand and leg, presented serious medical needs that posed a substantial risk of harm during his incarceration at OPP.

Plaintiff's complaints do not rise to the level of serious medical needs for purposes of constitutional analysis. See Nance v. Kelly, 912 F.2d 605, 607-08 (2d Cir. 1990) (Pratt, J., dissenting) ("conditions that have been held to fall short of the constitutional standard" of a serious medical need include a broken pin setting an injured shoulder, Wood v. Housewright, 900 F.2d 1332 (9th Cir. 1990); a mild concussion and broken jaw, Jones v. Lewis, 874 F.2d 1125 (6th Cir. 1989)); Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (inmate who had full range of motion in his shoulder despite continuing pain from old injury did not have serious medical need); Duncan v. Owens, No. 05-5066, 2006 WL 1999166, at *4 (W.D. Ark. July 17, 2006) ("A broken finger is not an objectively serious medical need. . . . [Plaintiff's] only visible symptom . . . was a swollen finger, and the x-rays . . . showed only degenerative joint damage with the possibility of an old, healed fracture. A finger in such a condition, broken or not, is not

11

a serious medical condition."); Rivera v. Johnson, No. 95-CV0845E(H), 1996 WL 549336, at *2 (W.D.N.Y. Sept. 20, 1996) ("Prison inmates suffering from ailments such as . . . a broken finger have all been held to fail to satisfy the constitutional serious-medical-need standard. . . . A broken finger, without more, simply does not present a condition of urgency . . . which correspondingly merits constitutional protection.").

Even assuming, however, for present purposes that plaintiff's medical problems, consisting of healed fractures in his right hand and leg, were serious, Griffin has alleged facts, confirmed by his testimony and his medical records, that negate any conceivable inference of deliberate indifference by jail officials. During his testimony, plaintiff stated that he had reviewed all of his medical records and that they were accurate. Plaintiff's complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical attention for the conditions about which he complains while incarcerated in OPP. He saw medical care providers at OPP for these conditions on June 9, September 27 and October 27, 2009 and in January 2010. He received x-rays related to his medical condition in June and September 2009, which showed that the fractures in his hand and his leg had healed. Physical examinations at OPP revealed that he had a full range of motion in his right hand and right leg and had normal pedal pulses and sensation in the leg. He had a moderate deformity of the leg,

minimal swelling and a slight limp, but he ambulated well and was able to bear weight on the leg. Griffin testified that he received Naprosyn and another medication at OPP.

Examination on February 17, 2010 at the MCLNO by an orthopedist revealed normal strength in Griffin's right leg and hand. The physician confirmed that x-rays showed a well-healed right fifth metacarpal fracture and a well-healed right tibia fracture. The doctor discharged Griffin from the orthopedic clinic and recommended that plaintiff continue strengthening exercises in both legs, take over-the-counter pain medication as needed and engage in weight-bearing as tolerated, with no restrictions. Thus, the orthopedist saw no need for further specialized treatment.

Under these circumstances, it cannot be inferred that jail personnel were deliberately indifferent to plaintiff's condition. While it is clear from his allegations and testimony that he is not satisfied with the effectiveness of his medical care, it is equally clear that the medical care provided was constitutionally adequate. Certainly, no finding of deliberate indifference to serious medical needs can be made based on this record, which includes both immediate and followup attention by medical personnel and the provision of medication and diagnostic x-rays for his complaints. See, e.g., Hayes v. Dallas County, No. 3-08-CV-2136-K, 2009 WL 250029, at *3 (N.D. Tex. Jan. 30, 2009) (Plaintiff "received extensive medical care, including reconstructive surgery, for his broken finger. . . . The mere fact that plaintiff was in pain during that time [of delayed

treatment] does not rise to the level of a constitutional violation."); Birmingham v. Dretke, No. H-05-2743, 2007 WL 528157, at *6 (S.D. Tex. Feb. 13, 2007), aff'd, 270 Fed. Appx. 318, 2008 WL 724609 (5th Cir. 2008) (Prison doctors were not deliberately indifferent when they elected not to perform surgery on plaintiff's fractured foot. "[T]he physicians were responsive to his medical needs; they ordered x-rays, examined his foot, and prescribed treatment over a period of several months. Although plaintiff speculates that his fracture did not heal because he still experiences pain and discomfort in that foot, x-rays . . . show that the fracture had healed."); Valenzuela v. Smith, No. S 04-0900, 2006 WL 403842, at *11 (E.D. Cal. Feb. 16, 2006), report & recommendation adopted, 2006 WL 736765 (E.D. Cal. Mar. 22, 2006), aff'd, 249 Fed. Appx. 528, 2007 WL 2827547 (9th Cir. 2007) (No deliberate indifference when plaintiff's fractured thumb was "examined and treated regularly . . . and pain medication was prescribed. Radiology reports reflected progress in the healing of plaintiff's thumb and ultimately showed 'a normal thumb.' Subsequent reports, ordered in response to plaintiff's complaints of re-injury and pain or in response to his inmate appeal, continued to reflect a healed fracture."); Estes v. Bowers, No. 3-00-CV-1203-BD, 2002 WL 628755, at *2, 3 (N.D. Tex. Apr. 17, 2002), aff'd, 73 Fed. Appx. 747, 2003 WL 22013460 (5th Cir. 2003) (To the extent that plaintiff argued "that Motrin therapy was not the appropriate course of treatment for his [pre-existing] back pain, he has failed to state a constitutional

14

violation." Neither a nine-day delay in x-raying a fractured rib nor a failure to prescribe medications for the fracture, in addition to the Motrin that plaintiff was already taking, were deliberate indifference.); Olson v. Finney, 885 F. Supp. 1480, 1483-84 (D. Kan. 1995) (delay in ordering x-rays for injured tailbone was not deliberate indifference when prisoner received pain medication and when recommended course of treatment did not change based on x-ray results).

Contentions like Griffin's that amount to a mere disagreement with the quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted); see id. (active treatment of prisoner's serious medical condition that ultimately resulted in death does not constitute the requisite deliberate indifference, even if treatment was negligently administered); see also Estelle, 429 U.S. at 107 (The "question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice . . . ."); Norton, 122 F.3d at 292 (No deliberate indifference when doctors "treated [plaintiff] at least once a month for several years, prescribed medicine, gave him medical supplies, and changed

his work status to reflect the seriousness of his problem."); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (Plaintiff who was 18 months post-surgical implantation of hip prosthesis, who complained of pain in his hip and who was ultimately diagnosed with broken wires in the prosthesis failed to state a claim for deliberate indifference when he was seen by medical personnel "numerous times for problems relating to his hip."); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993) (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Hernandez v. Duc, No. S-06-1251, 2007 WL 4218949, at *8-9 (E.D. Cal. Nov. 28, 2007), report & recommendation adopted, 2008 WL 339460 (E.D. Cal. Feb. 5, 2008) (Even assuming that physician "knew of plaintiff's repeated requests for surgical correction, determining a proper course of treatment is a matter of medical judgment. A medical decision that a condition is not best treated with surgery, without more, does not constitute cruel and unusual punishment.").

For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim of violation of his constitutional rights sufficient to obtain relief under Section 1983.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[5]

New Orleans, Louisiana, this __31st__ day of March, 2010.

  
JOSEPH C. WILKINSON, JR.  
UNITED STATES MAGISTRATE JUDGE

---

[5] Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.